# EXHIBIT A

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into as of July 1, 2009, by and between the Estate of Jeffrey Hyman p/k/a Joey Ramone (the "Estate") and the John Family Trust of 1997, u/d/t 2/12/97, Linda Cummings, Trustee (the "Trust"), as follows:

WHEREAS, the Estate initiated an arbitration (the "Arbitration") pursuant to the Commercial Arbitration Rules of the American Arbitration Association, Case No. 13-180-4-01942-08, against the Trust by the filing of a demand for arbitration (the "Demand") which asserted various claims against the Trust and Linda Cummings ("Cummings") under the Amended and Restated Shareholders' Agreement of Ramones Productions, Inc. ("RPI") dated as of April __, 2005 (the "Shareholders Agreement");

WHEREAS, the Trust and Cummings filed an Answer in the Arbitration denying the material allegations of Demand and asserted certain counterclaims against the Estate in the proceeding and a third-party claim against David Frey, a director of RPI appointed by the Estate pursuant to the Shareholders Agreement;

WHEREAS, an application was made on behalf of David Frey in an action styled "In the Matter of the Application of David Frey v. John Family Trust and Linda Cummings" in the Supreme Court of the State of New York, County of New York, seeking the dismissal of the third-party claims against David Frey, Index No. 602856/08 (the "Action") and the matter has been opposed by the Trust and Cummings; and

WHEREAS, the parties are willing to enter into a settlement of the claims alleged in the Arbitration and to discontinue the Action;

NOW, THEREFORE, in consideration of the mutual covenants and the release set forth below, it is by the Parties agreed as follows:

CL000059

1.     Simultaneous with the full execution and delivery of this Agreement, the parties shall execute: (a) the Stipulation of Withdrawal in the form annexed hereto as Exhibit "A," discontinuing and withdrawing the Arbitration; (b) the Stipulation of Dismissal, in the form annexed hereto as Exhibit "B," dismissing the proceedings in the Action; and (c) an Amendment to the Shareholders Agreement in the form annexed hereto as Exhibit "C".

2.     The Stipulations referred to in par. 1(a) and (b) above, shall, upon execution, be held in escrow by counsel for the Estate.  Upon written notification by counsel for the Trust and counsel for the Estate of each party's compliance with the terms set forth in paragraphs 3, 4 and 6 hereof, counsel for the Estate shall immediately cause the Stipulation of Withdrawal to be filed with the American Arbitration Association and the Stipulation of Dismissal to be filed with the clerk of the Supreme Court of the State of New York, County of New York. Notice of such filings shall be provided contemporaneously to counsel for the Trust.

3.     Simultaneous with the full execution and delivery of this Agreement, the parties each shall authorize and direct Ira Herzog to make all outstanding payments to (a) RPI and Taco Tunes income participants (with the exception of Marc Bell, Richard Reinhardt and Arturo Vega, any payments to whom shall be subject to the execution of separate agreements) with respect to royalty revenues payable by RPI and Taco Tunes, Inc. ("Taco Tunes") as of the date of this Agreement, and (b) RPI service providers, all as more particularly set forth in Schedule "1" annexed hereto.

4.     Within sixty (60) days of the full execution and delivery of this Agreement, the parties each shall, on behalf of RPI and/or Ramones 1234 LLC, execute merchandise license agreements with (a) Bravado; (b) Buddhist Punk; (c) Bioworld; (d) Hysteric Glamour; (e) C&D Visionary; and (f) Pyramid Posters. Such license agreements shall be based, subject to non-material modifications for the particular circumstances of individual licensees, on the form of

-2-

license agreement previously exchanged between John Cafiero ("Cafiero") on behalf of the Trust and Dave Frey ("Frey") on behalf of the Estate and on the terms previously discussed between Cafiero and Frey.  In addition to the foregoing, within sixty (60) days of the full execution and delivery of this Agreement, the parties each shall, on behalf of RPI and/or Ramones 1234 LLC, execute (i) a license agreement with Passmore Lab/Lucid Dreams 3D with respect to the theatrical and television release of a 3D version of the stand-alone 1977 concert at the Rainbow Theater entitled "It's Alive" (subject to any use restrictions or content limitations that may be applicable), (ii) a license agreement with Plain Jane Productions relating to the documentary film "Too Tough to Die: A Tribute to Johnny Ramone," and (iii) a license agreement with Zazzle on the form of agreement previously circulated among the parties.  The parties shall also undertake in good faith to address the various matters set forth in Schedule "2" hereto.  Notwithstanding the foregoing, upon the written consent of both the Trust and Estate, the parties may mutually agree not to enter into any of the above-referenced license agreements.

5.     The parties affirm the provisions of Section 9(b) and 12(b)(iv) of the Shareholders Agreement and the procedures for the use of Ramones Intellectual Property contained therein. The parties further agree that, except as otherwise permitted by law, any use or exploitation of Ramones Intellectual Property (including the Ramones name, logos, music, lyrics, photographs, images, video or other audio-visual content) by the Estate of Hyman, on the one hand (as to Joey Ramone), or the John Family Trust, on the other hand (as to Johnny Ramone), for or in connection with any of their separate or individual projects or promotions (the "Individual Projects"), shall require the prior written approval from RPI or the other shareholder (i.e., the Estate or the Trust, as the case may be), such approval not to be unreasonably withheld, delayed or conditioned.  Notwithstanding the foregoing, the parties further agree that: (a) both the Estate and the Trust may utilize the Ramones Presidential Seal logo (including the slogan "Hey Ho

-3-

CONFIDENTIAL

Let's Go" or "Look Out Below" as part of the logo) in connection with Individual Projects,

provided, however, that any such use of the Presidential Seal logo shall not: (i) reference "the

Ramones" within or in association with the logo and may reference only the name of Joey

Ramone for Individual Projects of the Estate and only the name of Johnny Ramone for

Individual Projects of the Trust, or (ii) permit the co-branding of the name or logo of any

unaffiliated third-party within or as part of the logo; and (b) subject to the terms hereof, no claim

will be asserted or advanced against the Estate or the Trust for uses of Ramones Intellectual

Property by either of them prior to the date hereof, including uses that are alleged to have been

made without full and proper authorization pursuant to Section 9(b) of the Shareholders

Agreement and this paragraph 5.

6.      The Trust shall, within forty-five (45) days of the execution of this Agreement,

remove the voice of Joey Ramone from the animated Johnny Ramone Army short displayed on

www.johnnyramone.com and Johnny Ramone's official My Space page, and will not authorize

use of the animated short (in its current form which includes the voice of Joey Ramone) by any

third party.

7.      With regard to any product commercially released by RPI, including any

advertising or promotional materials created or authorized by RPI relating thereto, the parties

agree that Ms. Cummings shall be referred to as "Linda Cummings-Ramone," and no other

variation thereon.

8.      Nothing herein is intended to be nor shall be construed as an admission by any of

the Parties of any liability, wrongdoing or improper conduct.

9.      Each Party shall bear its own attorneys' fees and costs in connection with this

Agreement, the Arbitration and the Action provided, however, within five (5) days from the date

CONFIDENTIAL

of full execution and delivery of this Agreement, the Trust shall cause the sum of $550.00 to be paid to the Estate, representing taxable costs due in connection with the Action.

10.     Each person executing this Agreement represents and warrants that he or she is duly authorized and empowered to enter into this Agreement and has the authority and approval to bind the party so represented.

11.     Each party represents and warrants that he, she or it has been represented by, and has consulted with, the counsel of his or its choice regarding the provisions, obligations, rights, risks and legal effects of this Agreement and that all parties have had an opportunity to be involved in the drafting of this Agreement.  Accordingly, the Parties agree that this Agreement is not in the future to be construed against any party as the drafter.

12.     The terms and conditions of this Agreement shall be construed and interpreted under, and all respective rights and obligations of the parties shall be governed by, the laws of the State of New York, other than those which would defer to the substantive laws of another jurisdiction.  The parties hereby irrevocably consent to the exclusive jurisdiction of the state and federal courts located in the State of New York, County of New York, to resolve any dispute arising out of or relating to this Agreement.  Each party hereby agrees to the venue of such courts and waives any claims of inconvenient forum.  Notwithstanding the foregoing, any dispute, claim or controversy arising under or relating to the terms and provisions contained in paragraphs 4, 5, 6 or 7 hereof, shall be subject to the arbitration provisions contained in paragraph 10 of the Shareholders Agreement.

13.     This Agreement constitutes the final, complete and exclusive agreement and understanding between and among the Parties relating to the subject matter hereof, and supersedes all prior or contemporaneous written or oral agreements with respect to the subject matter hereof.  Each Party acknowledges that: (a) there are no representations, warranties,

-5-

CL000063

agreements, arrangements or understandings other than as expressly contained in this Agreement, (b) the provisions of this Agreement shall be interpreted in accordance with their express terms and without regard to the contents of prior, non-final drafts, which shall not be used as evidence in any proceeding to enforce or interpret this Agreement, and (c) all rights and legal positions with respect matters not expressly contained herein are preserved.

14.     This Agreement may be executed in one or more counterparts all of which together shall constitute one and the same Agreement.

15.     A facsimile copy of a party's signature on this Agreement shall have the same force and effect as that party's original signature on this Agreement.

16.     This Agreement may not be modified or terminated, in whole or in part, without the written agreement of all the Parties.

ESTATE OF JEFFREY HYMAN

By: _____
Name:  Mitchel Hyman
Title:   Co-President

THE JOHN FAMILY TRUST

By: _____
Name:  Linda Cummings
Title:   Co-President

CONFIDENTIAL                    CL000064

agreements, arrangements or understandings other than as expressly contained in this Agreement, (b) the provisions of this Agreement shall be interpreted in accordance with their express terms and without regard to the contents of prior, non-final drafts, which shall not be used as evidence in any proceeding to enforce or interpret this Agreement, and (c) all rights and legal positions with respect matters not expressly contained herein are preserved.

14.   This Agreement may be executed in one or more counterparts all of which together shall constitute one and the same Agreement.

15.   A facsimile copy of a party's signature on this Agreement shall have the same force and effect as that party's original signature on this Agreement.

16.   This Agreement may not be modified or terminated, in whole or in part, without the written agreement of all the Parties.

ESTATE OF JEFFREY HYMAN

By: _____
    Name:
    Title:

THE JOHN FAMILY TRUST

By: _____
    Name:
    Title:

-6-

CONFIDENTIAL