# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MITCHEL HYMAN, individually and derivatively on behalf of Ramones Productions, Inc., | : | |
| | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | NO: 1:24-cv-05920-MKB-JAM |
| vs. | : | |
| | : | |
| LINDA CUMMINGS-RAMONE, | : | **Oral Argument Requested** |
| individually and as a Purported Trustee of the | : | |
| Linda Cummings-Ramone Living Trust and | : | |
| Survivor Trust, | : | |
| Defendant. | : | |
| | : | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

I.   PRELIMINARY STATEMENT ...........................................................................................1

II.   FACTUAL BACKGROUND ..............................................................................................2

      A.    RPI's Operative Shareholders' Agreement.............................................................2

      B.    Ms. Cummings-Ramone Has Consistently Ignored the Arbitration
      Provisions Set Forth in Section 10(a)...................................................................3

      C.    Ms. Cummings-Ramone Pre-Motion Letter in this Action ...................................6

III.   ARGUMENT .....................................................................................................................6

      A.    The Motion Should Be Denied at the Outset Because It Fails
      to Identify the Federal Rule of Civil Procedure Under Which It Arises ...........................7

      B.    Similarly, The Motion Should Be Denied Because Dismissal Is
      Not Appropriate Where Disputes Are Contractually Subject to Arbitration
      Rather Than Judicial Resolution—Which Is Precisely What Defendant
      Is (Wrongly) Contending Here............................................................................9

      C.    Finally, Even if the Court Finds That Ms. Cummings-Ramone's
      Motion Is Procedurally Adequate (Which It Is Not), the Motion Should Be Denied
      Because: 1) Claims Pertaining to the JOEY RAMONE Mark Are Plainly
      Not Subject to Section 10(a) of the 2005 Shareholders' Agreement, and
      2) Ms. Cummings-Ramone Waived Her Right to Arbitrate the Remaining
      Claims Pertaining to the RPI Trademarks.......................................................12

            a. Mr. Hyman's Claims Pertaining to the JOEY RAMONE Mark Do Not
            Fall Within the Scope of Section 10(a) of the 2005 Shareholders' Agreement ......13

            b. Ms. Cummings-Ramone Has Waived Her Ability to Arbitrate Mr. Hyman's
            Remaining Claims, Which Pertain to the RPI Trademarks....................................14

IV.  CONCLUSION....................................................................................................17

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Advest, Inc. v. Wachtel*,
667 N.Y.S.2d 549 (1st Dep't 1998).........................................................................15

*Commercial Lubricants, LLC v. Safety-Kleen Systems, Inc.*,
2018 WL 5045760 (E.D.N.Y. Oct. 17, 2018) (Brodie, J) ....................................13

*Diaz-Roa v. Hermes Law, P.C.*,
No. 24-CV-2105 (LJL), 2024 WL 4866450 (S.D.N.Y. Nov. 21, 2024) ..........14, 15

*Diversified Maint. Sys., Inc. v. J. Star Enterprises, Inc.*,
No. CV 22-959, 2022 WL 17476950 (E.D. La. Dec. 6, 2022)..............................11

*Doctor's Associates, Inc. v. Distajo*,
66 F.3d 438 (2d. Cir. 1995) ...................................................................................12

*Doe v. Trump Corporation*,
453 F. Supp.3d 634 (S.D.N.Y. 2020) ...............................................................15, 16

*Feld v. Postmates, Inc.*,
442 F. Supp.3d 825 (S.D.N.Y. 2020) .....................................................................10

*Goodman v. 1973 26 Foot Trojan Vessel, Arkansas Registration No. AR1439SN*,
859 F.2d 71 (8th Cir. 1988) .....................................................................................8

*Kramer v. Hammond*,
943 F.2d 176 (2d Cir. 1991) ...........................................................................13, 15

*U.S. E.P.A. ex rel. McKeown v. Port Authority of New York & New Jersey*,
162 F. Supp.2d 173 (S.D.N.Y. 2001) .......................................................................8

*McMillan v. Shere Foods, Inc.*,
No. 3:23-CV-00222-SLG, 2024 WL 4665343 (D. Alaska 2024)..................10, 11

*Meola v. Asset Recovery Solutions, LLC*,
2018 WL 4660373, at *3 (E.D.N.Y. 2018) (Brodie, J.)...........................................3

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022) ...........................................................................................14, 15

*Nicosia v. Amazon, Inc.*,
834 F.3d 220 (2d Cir. 2016) ...................................................................................10

*PPG Industries, Inc. v. Webster Auto Parts, Inc.*,
    128 F.3d 103 (2d Cir. 1997) ........................................................................... 15, 16, 17

*S & R Co. of Kingston v. Latona Trucking, Inc.*,
    159 F.3d 80 (2d Cir. 1998) ................................................................................. 15

*Safe Step Walk-In Tub Co., v. CKH Industries, Inc.*,
    2019 WL 13181378 (S.D.N.Y. Jul. 25, 2019) ................................................... 17

*Smith v. Spizzirri*,
    601 U.S. 472 (2024) .................................................................................... 10, 11

*Suncrest Corp. v. Chimo Shipping Limited*,
    236 F. Supp. 229 (S.D.N.Y. 1964) .................................................................... 14

*United States Securities and Exchange Commission v. Collector's Coffee, Inc.*,
    2020 WL 3869205 (S.D.N.Y. July 9, 2020) ................................................... 7, 9

*Matter of Zimmerman (Cohen)*,
    236 N.Y.15 (1923) ............................................................................................ 17

**Statutes**

28 U.S.C. § 1391 ...................................................................................................... 11

Federal Arbitration Act ................................................................................... 2, 9, 10

**Other Authorities**

Federal Rule of Civil Procedure 7(b)(1)(B) .............................................................. 8

Federal Rule of Civil Procedure 12 ........................................................................ 6, 7

Federal Rule of Civil Procedure 12(b) ................................................................ 7, 8, 9

Federal Rule of Civil Procedure 12(b)(1) ............................................................. 8, 11

Federal Rule of Civil Procedure 12(b)(3) ............................................................. 8, 11

Federal Rule of Civil Procedure 12(b)(6) ............................................................. 8, 10

Local Civil Rule 7.1(a) ............................................................................................. 9

Plaintiff Mitchel Hyman, individually and derivatively on behalf of Ramones Productions, Inc. ("Plaintiff" or "Mr. Hyman"), by and through his undersigned counsel, respectfully submits this memorandum of law in opposition (the "Opposition") to the Motion to Dismiss (the "Motion") the First Amended Complaint (the "FAC") served by Defendant Linda Cummings-Ramone, individually and as a purported Trustee of the Linda Cummings-Ramone Living Trust and Survivor Trust[1] ("Defendant" or "Ms. Cummings-Ramone") on February 14, 2025, in the above-captioned action (the "Action").[2]

## I.    PRELIMINARY STATEMENT

Ms. Cummings-Ramone's Motion should be denied for at least three (3) reasons: ***First***, the Motion should be denied at the outset because it fails to identify the Federal Rule of Civil Procedure under which it arises. ***Second***, the Motion should be denied because dismissal is not appropriate where disputes filed in federal court are contractually subject to arbitration rather than judicial resolution—which is precisely what Ms. Cummings-Ramone is (wrongly) contending here. ***Third***, and pivotally, even if the Court finds that Ms. Cummings-Ramone's Motion is procedurally adequate (which it is not), the Motion should be denied because (i) claims pertaining to the JOEY RAMONE Mark are plainly not subject to Section 10(a) of the 2005 Shareholders' Agreement at issue, and (ii) Ms. Cummings-Ramone waived her right to arbitrate Mr. Hyman's remaining claims pertaining to the RPI Trademarks.[3]    Put simply, Ms. Cummings-Ramone's Motion is both procedurally and substantively defective, and it should be denied accordingly.

---

[1] The Linda Cummings-Ramone Living Trust and Survivor Trust are referred to herein as the "LCR Trusts."

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the FAC.

[3] In the alternative, to the extent the Court determines that the JOEY RAMONE Mark could be construed to fall under Section 10(a) of the 2005 Shareholders' Agreement, Ms. Cummings-Ramone has also waived her ability to arbitrate Mr. Hyman's claims pertaining thereto for the same reasons she waived her ability to arbitrate Mr. Hyman's claims pertaining to the RPI Trademarks.

## II.    FACTUAL BACKGROUND

### A.    RPI's Operative Shareholders' Agreement

Mr. Hyman and Ms. Cummings-Ramone are Co-Shareholders[4] of Ramones Productions, Inc. ("RPI"), the vehicle through which the musical group, the Ramones, markets, merchandises, licenses, and produces its memorabilia and music-related products. *See, e.g.*, FAC ¶¶ 14, 32. Mr. Hyman is the brother of the late Jeffry Hyman, professionally known as "Joey Ramone," the original lead singer of the Ramones, and Ms. Cummings-Ramone is the wife of the late John Cummings, professionally known as "Johnny Ramone," the original guitarist of the Ramones. *Id.* at ¶¶ 1, 17. In addition to Mr. Hyman and Ms. Cummings-Ramone being the sole Shareholders of RPI—with each owning (or purporting to own) fifty percent (50%) of RPI's shares—RPI's Board of Directors is currently comprised of four (4) members (i.e., Mr. Hyman and his personally appointed designee, on the one hand, and Ms. Cummings-Ramone and her personally appointed designee, on the other hand). *Id.* at ¶ 33; *id.* at Ex. B (the "2005 Shareholders' Agreement") at § 1(b). Mr. Hyman and Ms. Cummings-Ramone are also Co-Presidents and Co-Secretaries of RPI. *Id.* at ¶ 27 (citing *id.* at Ex. C) (the "2009 Amendment to Shareholders' Agreement) § 3.

The 2005 Shareholders' Agreement explicitly establishes that RPI owns the intellectual property of the Ramones band, including the RPI Trademarks, and that unanimous consent of RPI's Board of Directors is required prior to an individual Shareholder's exploitation of the RPI Trademarks for commercial purposes. *Id.* at ¶ 47 (citing 2005 Shareholders' Agreement § 9(b)). The RPI Trademarks are one category of trademarks at issue in the instant Action. *See, e.g.*, *id.* at ¶¶ 34-36 (citing Exs. D, E, F, G, H, & I). However, the second category of trademarks at issue here—i.e., the JOEY RAMONE Mark—is treated differently by the parties and the Company. *Id.*

---

[4] Ms. Cummings-Ramone purports to be a Trustee of the LCR Trusts which hold the remaining fifty percent (50%) of RPI's Shares that do not belong to Mr. Hyman. *See* FAC ¶¶ 8, 30-32.

at ¶¶ 38-40 (citing Exs. J, K, & L).  Indeed, in a prior arbitration between the parties, Arbitrator Bob Donnelly determined that individual band member names—like Joey Ramone and Johnny Ramone—**do not** constitute RPI's intellectual property; he therefore permitted Ms. Cummings-Ramone to obtain registration of the trademark JOHNNY RAMONE in her own name, without the need for approval from RPI or other Shareholders.  *Id.* at Ex. N at pp. 12, 43.  In accordance with the foregoing decision, Mr. Hyman has likewise applied to obtain registration of the JOEY RAMONE Mark in his own name, without the need for approval from RPI or other Shareholders. *Id.* at ¶ 38 (citing Ex. J).

Disregarding this pivotal distinction between the RPI Trademarks and the JOEY RAMONE Mark, Ms. Cummings-Ramone now broadly maintains in her Motion that Section 10(a) of the 2005 Shareholders' Agreement—which states that "[a]ny dispute, controversy or claim arising under, out of, or in connection with or relating to th[e] Agreement, and any amendment, breach or alleged breach [t]hereof shall be determined and settled by arbitration pursuant to the rules then in effect of the American Arbitration Association ('AAA')"—mandates this Court's dismissal of *all* of Mr. Hyman's claims, with prejudice.  Ms. Cummings-Ramone's position is not, however, supported by the applicable law or facts at issue.

**B.    Ms. Cummings-Ramone Has Consistently Ignored the Arbitration Provisions Set Forth in Section 10(a)**

Notwithstanding Section 10(a) of the 2005 Shareholders' Agreement, Ms. Cummings-Ramone commenced a public action on January 19, 2024, against Mr. Hyman and his personal manager (and then-Board designee), Mr. David Frey ("Mr. Frey"), in the Supreme Court of New York, New York County.  *See* Index Number 650309/2024 (the "State Action").[5]  In her State

---

[5] References to "NYSCEF Doc. Nos." refer to those on the court's docket in the State Action.  Mr. Hyman respectfully submits that the Court can and should take judicial notice of the *existence* of (as opposed to the truth of the matter asserted within or factual findings of) the filings in the State Action referenced herein.  *See, e.g.*, *Meola v. Asset*

Action complaint *and* again in her amended complaint, Ms. Cummings-Ramone asserted four (4) causes of action: (1) breach of fiduciary duty; (2) unjust enrichment; (3) removal for cause of Mr. Frey as Director of RPI; and (4) appointment of temporary receiver over RPI. *See* NYSCEF Doc. No. 2 at ¶¶ 100-124. *See also* NYSCEF Doc. No. 248 (Amended Complaint).

Pivotally, Ms. Cummings-Ramone stated that the New York Supreme Court had personal jurisdiction over Mr. Hyman and Mr. Frey and that venue was proper in the New York Supreme Court (*id.* at ¶¶ 15-16) ***despite the fact that the causes of action she asserted against Mr. Hyman and/or RPI "ar[ose] under, out of or in connection with or relating to th[e 2005 Shareholders'] Agreement, and any amendment, breach or alleged beach [t]hereof[.]***" *Id.* at Ex. 1 (2005 Shareholders' Agreement) § 10(a) (emphasis added). Indeed, the 2005 Shareholders' Agreement was attached to both Ms. Cummings-Ramone's complaint and amended complaint as Exhibit 1. *See, e.g.*, NYSCEF Doc. No. 3. Furthermore, and importantly, while no intellectual property infringement claims were raised, the factual allegations in Ms. Cummings-Ramone's pleadings placed use of the RPI Trademarks (i.e., one category of IP at issue in the instant dispute) very much at issue in the State Action. *See, e.g.*, NYSCEF Doc. No. 3 ¶ 44, 46, 70, 71, 72. As did Mr. Hyman's counterclaims and amended counterclaims, which alleged that Ms. Cummings-Ramone, through her self-serving social media activity promoting her "Linda Ramone" name and brand, as well as her use of Ramones-related content and intellectual property, caused severe damage to RPI and was a breach of her fiduciary duty to Mr. Hyman and RPI. *See, e.g.* NYSCEF Doc. No. 249 at ¶¶ 111-118. Tellingly, Ms. Cummings-Ramone ***did not*** assert as an affirmative defense in the

---

*Recovery Solutions, LLC*, 2018 WL 4660373, at *3 (E.D.N.Y. 2018) (Brodie, J.) ("Examples of judicially noticeable sources include, *inter alia*, court opinions and public filings by and with federal agencies. *Bristol v. Nassau Cty.*, 685 F. App'x 26, 28 (2d Cir. 2017) (decisions in related state criminal proceedings); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (testimony); *Int'l Star Class Yacht Racing Ass'n*, 146 F.3d at 70–71 (court opinions); *Kramer v. Time Warner Inc.*, 937 F.2d 767,774 (2d Cir. 1991) (filings with the Securities and Exchange Commission).").

State Action that she believed Mr. Hyman's claims were subject to arbitration and/or "arbitration and award" under Section 10(a) of the 2005 Shareholders' Agreement generally.  *See* NYSCEF Doc. Nos. 158 & 257.  Instead, she proceeded to engage in full-fledged litigation of her claims and Defendants' counterclaims.

There have already been multiple rounds of pleadings in the State Action and approximately fifteen (15) motion sequences adjudicated between the parties therein over the span of approximately fifteen (15) months.  *See* Index Number 650309/2024.  Additionally, discovery in the State Action has been well-underway.  *See, e.g.*, NYSCEF Doc. No. 146 (Preliminary Conference Order dated March 25, 2024).  Indeed, the State Action remains pending, and use of the RPI Trademarks remains at issue.  *See, e.g.*, NYSCEF Doc. No. 248 (Ms. Cummings-Ramone's amended complaint) at ¶¶ 50 ("Ms. [Cummings-Ramone] is also concerned about, and brings this action to vindicate RPI's legal rights and entitlement, as Defendants have run roughshod over the company's intellectual property rights.").  Hence, as addressed further below, Ms. Cummings-Ramone made the strategic decision to ignore that her claims in the State Action against Mr. Hyman, Mr. Frey, and/or RPI may have been subject to Section 10(a) of the 2005 Shareholders' Agreement for purposes of availing herself of a public judicial forum, including the benefits associated therewith, including, but not limited to, discovery procedures afforded in actions pending in courts of law that are not available in arbitration.

Understanding that Ms. Cummings-Ramone had made the decision not to adhere to the arbitration terms set forth in the 2005 Shareholders' Agreement—and that Ms. Cummings-Ramone, as a result of her conduct in the State Action, had waived her ability to compel arbitration of disputes arguably arising under the 2005 Shareholders' Agreement—Mr. Hyman commenced this Action in the U.S. District Court for the Eastern District of New York on January 24, 2025,

raising claims for trademark infringement and unfair competition pertaining to the RPI Trademarks and the JOEY RAMONE Mark, and dilution pertaining to RPI's RAMONES Mark.  ECF No. 1.

### C.    Ms. Cummings-Ramone Pre-Motion Letter in this Action

On November 25, 2024, Ms. Cummings-Ramone filed a letter with the Court in anticipation of her desire to file a motion to dismiss all of Mr. Hyman's claims in this Action.  *See* ECF No. 16.  Therein, Ms. Cummings-Ramone asserted her argument in the very first paragraph: "Mr. Hyman's claims are foreclosed by the mandatory alternative dispute resolution provisions of [RPI's] shareholders' agreement and should be dismissed under Federal Rule of Civil Procedure 12." *Id.*[6]

After a telephone conference with the parties, the Court set a briefing schedule for Ms. Cummings-Ramone's Motion.  *See* 12/23/2024 Minute Order.  Pursuant thereto, Mr. Hyman filed his FAC on January 24, 2025, and Ms. Cummings-Ramone served her Motion on February 14, 2025.

## III.   ARGUMENT

As set forth above, Ms. Cummings-Ramone's Motion should be denied for at least three (3) reasons:  First, the Motion should be denied at the outset because it fails to identify the Federal Rule of Civil Procedure under which it arises.  Second, the Motion should be denied because dismissal is not appropriate where disputes are, pursuant to contract, subject to arbitration rather than judicial resolution—which is precisely what Defendant is inaccurately contending here.  Finally, even if the Court finds that Ms. Cummings-Ramone's Motion is procedurally adequate

---

[6] Ms. Cummings-Ramone also maintained in her letter that she "anticipates that the binding mediation [then] *sub judice* before Judge Scheindlin," which pertained to the issue of whether or not Mr. Frey should be removed from RPI's Board of Directors for cause, would ultimately "address the substance of Mr. Hyman's present claims[.]" ECF No. 16.  Ms. Cummings-Ramone was, however, incorrect on this point, a**s** the final award ultimately issued by Judge Scheindlin resolved none of the issues raised by Mr. Hyman in the instant case. *See* NYSCEF Doc. No. 300 (December 5, 2024 Final Award).

(which it is not), the Motion should be denied because (i) claims pertaining to the JOEY RAMONE Mark are plainly not subject to Section 10(a) of the 2005 Shareholders' Agreement; and (ii) Defendant waived her right to arbitrate the remaining claims pertaining to the RPI Trademarks. [7]

### A.    The Motion Should Be Denied at the Outset Because It Fails to Identify the Federal Rule of Civil Procedure Under Which It Arises

As stated above, Ms. Cummings-Ramone argued in the very first paragraph of her pre-motion letter that "Mr. Hyman's claims are foreclosed by the mandatory alternative dispute resolution provisions of [RPI's] shareholders' agreement ***and should be dismissed under Federal Rule of Civil Procedure 12***." *See* ECF No. 16 (emphasis added). Yet, entirely absent from the Motion, Defendant's Opening Brief,[8] and any form of proposed order[9] is ***any*** cite to Federal Rule of Civil Procedure 12, let alone any one or more of the specifically enumerated Rule 12(b) defenses pursuant to which defendants in general are required to base the relief Defendant requested in the Motion: "dismiss[al], with prejudice, [of] each of the claims in the [FAC]." *See* Def. Br. at 10.

In fact, there is not a ***single citation to the Federal Rules of Civil Procedure*** anywhere in the Motion or Defendant's Opening Brief that provides the Court or Mr. Hyman with a basis to dismiss "each of the claims in the [FAC]" in their entireties and with prejudice. *Id.* This is despite the fact that the Court and Mr. Hyman alike "are entitled to know precisely which … bases are being relied on by [Ms. Cummings-Ramone]" and the fact that "the Court along with [Mr. Hyman] are entitled to a brief that lays out the elements of what must be proven for each of the bases that [Ms. Cummings-Ramone] relies on." *United States Securities and Exchange Commission v.*

---

[7] Again, alternatively, to the extent the Court determines that the JOEY RAMONE Mark could be construed to fall under Section 10(a) of the 2005 Shareholders' Agreement, Ms. Cummings-Ramone has still waived her ability to arbitrate them for the same reasons she waived her ability to arbitrate claims pertaining to the RPI Trademarks.

[8] Cited herein as "Def. Br."

[9] A proposed order was not served upon Plaintiff on February 14, 2025.

*Collector's Coffee, Inc.*, 2020 WL 3869205, at *2 (S.D.N.Y. July 9, 2020). Ms. Cummings-Ramone failed to fulfill these rudimentary requirements in her Opening Brief.

As a result, Ms. Cummings-Ramone has improperly tasked Mr. Hyman with determining the basis or bases pursuant to which her Motion was brought, despite the fact that he was not the author or filer of such Motion. Indeed, the differences in the potential legal standards at issue (which were not expressly identified by Ms. Cummings-Ramone) pose substantial problems that necessitate denying the Motion for lack of clarity.

For example, if the Motion was brought pursuant to Rule 12(b)(1), the Court would be able to "resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *U.S. E.P.A. ex rel. McKeown v. Port Authority of New York & New Jersey*, 162 F. Supp.2d 173, 182 (S.D.N.Y. 2001). Similarly, if the Motion was brought pursuant to Rule 12(b)(3), the Court could also "examine facts outside the complaint to determine whether venue is proper." *Id.* at 183 (internal quotations and citations omitted). In contrast, "when matters outside the pleadings are presented on a motion to dismiss for failure to state a claim under Rule 12(b)(6), generally the district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment and afford all the parties the opportunity to present supporting material." *Id.* at 182. Thus, legal standards matter, and Ms. Cummings-Ramone's failure to cite to Rule 12(b), let alone one or more of the particular 12(b) defenses, necessitates the Court's denial of the Motion. *See* Fed. R. Civ. P. 7(b)(1)(B) (requiring motions to "state with particularity the grounds for seeking the order"); *Goodman v. 1973 26 Foot Trojan Vessel, Arkansas Registration No. AR1439SN*, 859 F.2d 71, 74 (8th Cir. 1988) ("The particularity requirement protects district courts from being subject to reversal for rulings on which they did not have the benefit of argument from the opposing

side and ensures that opposing parties will have notice of their opponents' contentions."); *Collector's Coffee, Inc.*, 2020 WL 3869205, at *3 (stating "motion may be denied in whole or in part for lack of clarity"); *see also* L. Civ. R. 7.1(a) ("All motions must include the following motion papers: (1) A notice of motion, or an order to show cause signed by the court, which must specify the applicable rules or statutes pursuant to which the motion is brought, and must specify the relief sought by the motion[.]").[10]

> **B.    Similarly, The Motion Should Be Denied Because Dismissal Is Not Appropriate Where Disputes Are Contractually Subject To Arbitration Rather Than Judicial Resolution—Which Is Precisely What Defendant Is (Wrongly) Contending Here**

As referenced above, Ms. Cummings-Ramone's Notice of Motion merely states that she is moving "the Court, for an Order, pursuant to the Federal Arbitration Act [("FAA")], **dismissing with prejudice the [FAC**]" *See* Notice of Motion (emphasis added).[11]   However, a motion to dismiss, particularly one purportedly based solely on the FAA, is not the proper vehicle to argue that Mr. Hyman's claims should be dismissed in any form.

Indeed, Ms. Cummings-Ramone begins her argument by asserting that Mr. Hyman's claims "should be dismissed with prejudice pursuant to the [FAA]." Def. Br. at 5.  She then jumps right into her purported reasoning: "[w]hen it is apparent—on the face of the complaint and documents properly incorporated therein—that claims are subject to arbitration, a district court may dismiss

---

[10] Given that Ms. Cummings-Ramone's deadline to file a motion to dismiss has passed, she has waived her right to move the Court (or, ultimately, an arbitrator, should the Court ultimately decide to grant the Motion) to dismiss the FAC pursuant to any of the defenses encompassed within Rule 12(b).  Therefore, Ms. Cummings-Ramone's attempt to "reserve[] the right to address the allegations in the [FAC]—including any other applicable basis for dismissal—before the duly empaneled arbitrator, or, should this Court deny the present Motion, through future motion practice" (Def. Br. at 8 n. 3) is entirely improper.

[11] Neither the Notice of Motion nor Ms. Cummings-Ramone's Opening Brief clarify which specific section(s) of the FAA she contends provides the Court with a basis to grant her requested relief.

in favor of arbitration without the delay of discovery." *See* Def. Br. at 5 (citing *Nicosia v. Amazon, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016)).

Importantly, though, the defendant in the case on which Ms. Cummings-Ramone relies, *Nicosia*, **unlike Ms. Cummings-Ramone in this Action**,[12] "moved pursuant to **Rule 12(b)(6)** to dismiss the complaint for failure to state a claim upon which relief may be granted." *Nicosia*, 834 F.3d at 229 (emphasis added). Thus, *Nicosia* is distinguishable for that reason alone, as Ms. Cummings-Ramone did not move under Rule 12(b)(6) or any other discernable Federal Rule of Civil Procedure. Furthermore, and pivotally, courts within the Second Circuit have interpreted *Nicosia* to stand for the notion that "[i]f the Court determines that the parties have agreed in writing to arbitration [which is precisely what Ms. Cummings-Ramone is contending here], then the Court **will stay the proceedings**"—not dismiss the opposing party's claims. *See, e.g.*, *Feld v. Postmates, Inc.*, 442 F. Supp.3d 825, 829 (S.D.N.Y. 2020) (citing *Nicosia*, 834 F.3d at 229) (emphasis added).

The foregoing proposition was confirmed by the Supreme Court in 2024 decision *Smith v. Spizzirri*, which Ms. Cummings-Ramone cites in her Motion for a different purpose. 601 U.S. 472, 477 (2024). *Spizzirri* clarified that Section 3 of the FAA "overrides any discretion a district court might have had to dismiss a suit when the parties have agreed to arbitration." *Id.* Thus, even if the Court is inclined to treat the Motion as one properly brought under Rule 12(b)(6)—which it should not—Ms. Cummings-Ramone's reliance on *Nicosia* does not provide the Court with a basis for the relief she seeks via the Motion (i.e., dismissal of the FAC).[13]

---

[12] Ms. Cummings-Ramone **deliberately** decided **not** to move the Court pursuant to Rule 12(b)(6) or any other Federal Rule of Civil Procedure. *Compare* Notice of Motion *with*, ECF No. 16 (Ms. Cummings-Ramone's pre-motion conference letter).

[13] *See also McMillan v. Shere Foods, Inc.*, No. 3:23-CV-00222-SLG, 2024 WL 4665343, at *2 n. 20 (D. Alaska 2024) ("The situation here is not distinguishable based on the fact that there was no request for a stay.")

Furthermore, district courts around the country have applied *Spizzirri* to circumstances where a movant filed a motion to dismiss for lack of subject matter jurisdiction (i.e., pursuant to Rule 12(b)(1)) and determined that dismissal was an inappropriate mode of relief. *See, e.g.*, *McMillan*, 2024 WL 4665343, at *2 ("In light of the Supreme Court's recent holding in *Spizzirri*, dismissal based on an alleged arbitration agreement is precluded."). Indeed, as the *McMillian* court explained, a defendant "is entitled to assert that [a plaintiff]'s claims are subject to arbitration; the issue is simply that a motion to dismiss is not the proper vehicle to do so." *Id.* (noting as well if defendant subsequently moved court to compel arbitration, summary judgment standard would apply).

Courts have similarly held, following the issuance of *Spizzirri*, that motions to dismiss for improper venue (i.e., pursuant to Rule 12(b)(3)) are an inappropriate vehicle to argue claims should be dismissed because they are subject to an arbitration provision. For example, in *Diversified Maint. Sys., Inc. v. J. Star Enterprises, Inc.,* No. CV 22-959, 2022 WL 17476950, at *5 (E.D. La. Dec. 6, 2022), the defendant contended that the "[p]laintiff's claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) because they are subject to arbitration." Notwithstanding the defendant's contention, the Court reasoned that "because [the defendant] d[id] not argue that [the plaintiff]'s claims should be dismissed for failure to satisfy any of the categories listed in 28 U.S.C. § 1391, [the plaintiff]'s claims cannot be dismissed for improper venue." *Id.* Thus, the *Diversified Maint. Sys.* court found that "the [d]efendant's motion to dismiss pursuant to Rule 12(b)(3) must be denied because it [wa]s the improper vehicle for addressing [the p]laintiff's failure to arbitrate." *Id.* (internal footnote omitted).

11

In sum, even if Court were to treat the Motion as one to dismiss for lack of subject matter jurisdiction, improper venue, and/or failure to state a claim upon which relief can be granted, the Court would still be required to deny Ms. Cummings-Ramone her requested relief of dismissal.

      **C.**      **Finally, Even if the Court Finds That Ms. Cummings-Ramone's Motion Is Procedurally Adequate (Which It Is Not), the Motion Should Be Denied Because: 1) Claims Pertaining to the JOEY RAMONE Mark Are Plainly Not Subject to Section 10(a) of the 2005 Shareholders' Agreement, and 2) Ms. Cummings-Ramone Waived Her Right to Arbitrate the Remaining Claims Pertaining to the RPI Trademarks**

Even assuming, *arguendo*, that the Motion was properly brought before the Court by Ms. Cummings-Ramone (which it was not), the Motion should still be denied in full because 1) claims pertaining to infringement of the JOEY RAMONE Mark are not subject to Section 10(a) of the 2005 Shareholders' Agreement, and 2) Ms. Cummings-Ramone has waived her right to arbitrate Mr. Hyman's claims based on her prior litigation conduct in the State Action.

Before substantively addressing the foregoing two (2) points, Mr. Hyman acknowledges Ms. Cummings-Ramone's threshold position that "any question of arbitrability must be decided by the duly empaneled arbitrator." Def. Br. at 8 (citing FAA and *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019)). However, this statement is inaccurate under the instant circumstances, as claims pertaining to the JOEY RAMONE Mark clearly fall outside of the scope of the Section 10(a) of the 2005 Shareholders' Agreement given Arbitrator Donnelly's Final Award, and, with respect to the RPI Trademarks, which *could* arguably fall under Section 10(a), courts have held that "a district court [rather than an arbitrator] may reach the question of waiver whenever a party seeking arbitration has engaged in ***any prior litigation***." *Doctor's Associates, Inc. v. Distajo*, 66 F.3d 438, 456 n. 12 (2d. Cir. 1995) (stating, *inter alia*, as follows: "Our precedent therefore teaches that a court's ability to reach the question of waiver as a defense to arbitration is

not grounded solely in its ability to control litigation practices before it.  In light of *Kramer*,[14] we are bound to hold that a district court may reach the question of waiver whenever a party seeking arbitration has engaged in ***any prior litigation***.") (emphasis added); *see also, e.g.*, *Commercial Lubricants, LLC v. Safety-Kleen Systems, Inc.*, 2018 WL 5045760, at *6 (E.D.N.Y. Oct. 17, 2018) (Brodie, J) ("The question of whether a party's pretrial conduct amounts to waiver of the defense of arbitration is a legal question to be decided by the court.").[15]  Here, again, the basis of Mr. Hyman's waiver argument is that Ms. Cummings-Ramone has engaged specifically in prior ***litigation conduct*** in the State Action pertaining to the same general IP-related conduct at issue here.  Therefore, the threshold question of arbitrability in this case should be decided by the Court rather than an arbitrator—and the Court should decide to retain all of Mr. Hyman's claims, which are properly in its jurisdiction.

> a.    Mr. Hyman's Claims Pertaining to the JOEY RAMONE Mark Do Not Fall Within the Scope of Section 10(a) of the 2005 Shareholders' Agreement

As mentioned above, the Final Award issued by Arbitrator Donnelly dated May 28, 2019, found "that the individual band members (including, but not limited to, Joey Ramone and Johnny Ramone) each own their individual trademarks."  *See* FAC, Ex. N at p. 12 (Finding Number 2). The Arbitrator subsequently issued the binding holding that that Ms. Cummings-Ramone had the opportunity to make lawful use and obtain federal registration of the trademark JOHNNY RAMONE in her own name, without involvement of RPI (*id.* at p. 43)—and Mr. Hyman followed suit and made lawful use and applied for federal registration of the JOEY RAMONE Mark in his own name, without involvement of RPI.  *See* FAC ¶ 38 (citing Ex. J).  In light of the foregoing, it

---

[14] *See Kramer v. Hammond*, 943 F.2d 176 (2d Cir. 1991).
[15] Ms. Cummings-Ramone relies on R-7(a) of the AAA Commercial Arbitration Rules (the "AAA Rules") for the contrary position.  *See* Def. Br. at 9 (citing Decl. of Adam R. Mandelsberg, Ex. 1, R-7(a)).  But the AAA Rules do not override the fact that 1) claims pertaining to the JOEY RAMONE Mark are clearly not subject to any arbitration provision, and 2) a litigation-conduct waiver must be evaluated by the district court, not an arbitrator.

is not possible to construe Mr. Hyman's claims focused on Ms. Cummings-Ramone's infringement and unfair competition pertaining to his JOEY RAMONE Mark as "arising under, out of or in connection with or relating to" the confines of the 2005 Shareholders' Agreement.[16]  *Id.* at Ex. B § 10(a).  They are therefore not subject to arbitration under Section 10(a) or any other provision.[17]

   b. <u>Ms. Cummings-Ramone Has Waived Her Ability to Arbitrate Mr. Hyman's Remaining Claims, Which Pertain to the RPI Trademarks</u>

  It is axiomatic that, like any other contractual right, a party's right to have a dispute referred to arbitration can be waived.  *See, e.g.*, *Suncrest Corp. v. Chimo Shipping Limited*, 236 F. Supp. 229, 230 (S.D.N.Y. 1964) ("Both parties to an arbitration agreement, or either of them may by their conduct waive their right to arbitration.").  According to the U.S. Supreme Court, waiver "is the intentional relinquishment or abandonment of a known right."  *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (citing *United States v. Olano*, 507 U.S. 725, 733 (1993)).  "To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party."  *Id.*  Thus, the question here is whether Ms. Cummings-Ramone "knowingly relinquished [her] right to arbitrate by acting inconsistently with that right."  *Diaz-Roa v. Hermes Law, P.C.*, No. 24-CV-2105 (LJL), 2024 WL 4866450, at *10 (S.D.N.Y. Nov. 21, 2024) (internal quotations and citations omitted).  The answer is quite clearly yes with respect to Mr. Hyman's infringement, unfair competition, and dilution claims centered on the RPI Trademarks.

---

[16] While it is true that Section 12(b)(iv) of the 2005 Shareholders' Agreement *acknowledges* Mr. Hyman's exclusive license to the name JOEY RAMONE (as well as Ms. Cummings-Ramone's exclusive license to the name JOHNNY RAMONE), the 2005 Shareholders' Agreement, *viewed in light of Arbitrator Donnelly's explicit findings in the 2019 Final Award*, makes clear that these individual band names are not RPI Trademarks subject to RPI control and are not similarly subject to the terms of the 2005 Shareholders' Agreement governing intellectual property usage.

[17] In the alternative, Ms. Cummings-Ramone also waived her ability to arbitrate claims pertaining to the JOEY RAMONE Mark for the reasons set forth in Section III(C)(b), *infra*.  *See, e.g.*, NYSCEF Doc. No. 248 (Ms. Cummings-Ramone's amended complaint in the State Action) ¶¶ 38–52 (alleging film project based on Mr. Hyman's NY Times Best Selling novel, *I Slept With Joey Ramone: A Punk Rock Family Memoir*, would cause substantial and irreparable damage).

Because Ms. Cummings-Ramone has long ignored—and repeatedly acted in direct contravention of—the alternate dispute resolution provisions set forth in RPI's 2005 Shareholders' Agreement (*see* FAC, Ex. B), she is estopped from now arguing that Mr. Hyman's instant RPI Trademark-focused claims are subject to these provisions.

To be sure, the Second Circuit considers, when evaluating whether a party has waived its right to arbitrate particular claims, the "amount of time elapsed" and "amount of litigation" that has taken place. *See Diaz-Roa*, 2024 WL 4866450, at *10. However, a finding of "prejudice" is not required for a court to determine that waiver has taken place. *See Morgan*, 596 U.S. at 419. Nor is there is a "bright-line rule" for courts to use to determine "when a party has waived its right to arbitrate: the determination of waiver depends on the particular facts of each case." *PPG Industries, Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107-08 (2d Cir. 1997). And, again, the analysis extends to a party's conduct in connection with prior litigation. *See, e.g., Advest, Inc. v. Wachtel*, 667 N.Y.S.2d 549, 551 (1st Dep't 1998) (citing *Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993)); *Kramer v. Hammond*, 943 F.2d 176 (2d Cir. 1991).

Here, the amount of time elapsed between Ms. Cummings-Ramone's commencement of the State Action (which, again, includes numerous factual allegations pertaining to use of the RPI Trademarks) and service of her Motion in this Action is a significant fifteen (15) months. *Compare* Section II(B), *supra with, e.g., S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80 (2d Cir. 1998) (finding waiver after, *inter alia*, "actively participating in litigation for over 15 months"). In fact, numerous cases from within the Second Circuit have found waiver, in part, due to comparable intervals of elapsed time, as collected by the Southern District of New York in *Doe v. Trump Corporation*, which denied the movant's motion to compel arbitration:

> The first factor, time elapsed from when litigation was commenced until the request for arbitration, favors waiver. Plaintiffs filed the

15

Complaint on October 29, 2018. Defendants did not request to arbitrate the claims until July 11, 2019, over eight months after the litigation began. *See PPG Industries, Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 108 (2d Cir. 1997) (finding waiver in part because "approximately five months passed between the time defendants asserted arbitrable claims and [the plaintiff] filed its petition to compel"); *Leadertex Inc. v. Morganton Dyeing and Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995) (finding waiver in part because the defendant "could have invoked the arbitration clause at the outset of the litigation" but instead "allowed seven months ... to elapse ... before seeking to enforce the contractual arbitration clause."); *Commercial Lubricants, LLC v. Safety-Kleen Systems, Inc.*, 14 Civ. 7483, 2018 WL 5045760 at *7 (E.D.N.Y. Oct. 17, 2018) (finding waiver in part because "Defendant waited seven months ... to raise the arbitration issue").

453 F. Supp.3d 634, 645 (S.D.N.Y. 2020). While such a period of elapsed time may be insufficient *in and of itself* for the Court to find Ms. Cummings-Ramone waived her right to invoke Section 10(a) of the 2005 Shareholders' Agreement, the "amount of litigation" between the parties has been substantial (and exceedingly involved) as well.

Indeed, there have already been multiple rounds of pleadings in the State Action and approximately fifteen (15) motion sequences adjudicated between the parties therein over the span of approximately fifteen (15) months. *See* Index Number 650309/2024. Additionally, discovery in the State Action has been well-underway. *See, e.g.*, NYSCEF Doc. No. 146 (Preliminary Conference Order dated March 25, 2024). And use of RPI Trademarks remains at issue. *See, e.g.*, NYSCEF Doc. No. 248 (Ms. Cummings-Ramone's amended complaint) at ¶¶ 50 ("Ms. [Cummings-Ramone] is also concerned about, and brings this action to vindicate RPI's legal rights and entitlement, as Defendants have run roughshod over the company's intellectual property rights."). Thus, under the totality of circumstances at issue, a finding of waiver is warranted. Indeed, in *PPG Industries*, the Second Circuit's analysis included the fact that party moving to compel arbitration engaged in discovery and filed substantive motions. *See* 128 F.3d at 109. *See*

16

*also Safe Step Walk-In Tub Co., v. CKH Industries, Inc.*, 2019 WL 13181378, at *3 (S.D.N.Y. Jul. 25, 2019) ("In the instant case, the amount of litigation strongly counsels in favor in waiver. Here, Plaintiff has filed three motions requesting judgment on the merits from this Court, producing a record of extended and costly litigation. This court has inferred waiver for less substantial litigation practice."). These factors, in conjunction with the amount of elapsed time since Ms. Cummings-Ramone commenced the State Action, warrants a finding a waiver in this Action as well.

Furthermore, the State Action evidences additional intent on the part of Ms. Cummings-Ramone to litigate issues pertaining to RPI Trademarks. Indeed, in response to both Mr. Hyman's counterclaims and amended counterclaims, Ms. Cummings-Ramone did not assert that Mr. Hyman's claims are barred, in whole or in part, by "arbitration and award" in the general sense, which ***would have*** resulted in a clear indication of her intention to invoke her arbitration rights under **Section 10(a)** of the 2005 Shareholders' Agreement. *See, e.g.*, *PPG Industries, Inc.*, 128 F.3d at 109 ("[The moving party] failed to assert the defense of arbitration in its answer to either PPG's or Webster's counterclaims, which would have resulted in a clear indication of PPG's intention to invoke its arbitration rights.").

Under these circumstances, Ms. Cummings-Ramone has demonstrably "elected to settle [her] disputes not by arbitration but in a court of law." *Matter of Zimmerman (Cohen)*, 236 N.Y.15, 19 (1923). Her instant gamesmanship cannot be permitted, and her Motion to dismiss this Action must be denied.

## IV.    CONCLUSION

Given all of the foregoing, Ms. Cummings-Ramone's Motion to Dismiss should be denied in full, and all of Mr. Hyman's claims should remain before this Court.

17

Respectfully submitted,

**ROYER COOPER COHEN BRAUNFELD LLC**

Dated: March 7, 2025

By: /s/   Donna A. Tobin
Donna A. Tobin, Esquire
Julie M. Latsko, Esquire*
David S. Hollander, Esquire*
1120 Avenue of the Americas, 4th Floor
New York, New York, 10036-6700
Tel: (212) 994-0454
Email: dtobin@rccblaw.com
          jlatsko@rccblaw.com
          dhollander@rccblaw.com

*Admitted *Pro Hac Vice*

*Attorneys for Plaintiff*

18

<u>WORD COUNT CERTIFICATION</u>

Plaintiff's foregoing Memorandum of Law contains 5,856 words (including the text, headings, footnotes, and quotations, but excluding the table of contents, table of authorities, case caption, signature block, and certificate of service) and therefore complies with the 8,750-word limit set forth in Local Rule 7.1(c).

Dated: March 7, 2025                                **ROYER COOPER COHEN BRAUNFELD LLC**

                                              By: <u>/s/    Donna A. Tobin</u>
Donna A. Tobin, Esquire
1120 Avenue of the Americas, 4th Floor
New York, New York, 10036-6700
Tel: (212) 994-0454
Email: dtobin@rccblaw.com

*Attorneys for Plaintiff*

19