UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------

MITCHEL HYMAN, *individually and derivatively on behalf of Ramones Productions, Inc.*,

                    Plaintiff,

v.

LINDA CUMMINGS-RAMONE, *individually and as a Purported Trustee of the Linda Cummings-Ramone Living Trust and Survivor Trust*,

                    Defendant.

-------------------------------------------------------------------

**MEMORANDUM & ORDER**
24-CV-5920 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiff Mitchel Hyman commenced this action on behalf of himself and derivatively on behalf of Ramones Productions, Inc. ("RPI") on August 23, 2024, against Defendant Linda Cummings-Ramone ("Cummings-Ramone"), individually and as a purported Trustee of the Linda Cummings-Ramone Living Trust and Survivor Trust ("LCR Trusts"). (Compl., Docket Entry No. 1; Am. Compl., Docket Entry No. 25.) Plaintiff alleges that Defendant infringed and diluted Plaintiff's and RPI's intellectual property for her own fame and sole benefit by using RPI's trademarks and Plaintiff's intellectual property rights in an unauthorized manner. (Am. Compl. ¶¶ 14–96.) Based on these actions, Plaintiff brings claims against Defendant for trademark infringement, unfair competition, and trademark dilution under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and 1125(c) (the "Lanham Act"), as well as common law trademark infringement and unfair competition. (*Id.* ¶¶ 104–30.)

Currently before the Court is Defendant's motion to dismiss the Amended Complaint based on the parties' arbitration agreement; Plaintiff opposes the motion.[1] For the reasons discussed below, the Court grants Defendant's motion.

I. **Background**

The Court assumes the truth of the facts alleged in the Amended Complaint for the purpose of deciding Defendant's motion. The Court also considers documents attached to the Amended Complaint and takes judicial notice of relevant state laws, state regulations, case law, and public documents that are not subject to dispute. *See* Fed. R. Evid. 201(b) (permitting judicial notice of facts "not subject to reasonable dispute").

   a. **Factual background**

Plaintiff is a citizen of New York, an officer and director of RPI, and owns fifty percent of the outstanding shares of RPI. (Am. Compl. ¶ 7.) Defendant is a citizen of California, an officer and director of RPI, and owns the remaining fifty percent of outstanding shares of RPI. (*Id.* ¶ 8.) RPI is a New York corporation operated by two corporate governance documents: (1) a 2005 Amended and Restated Shareholders' Agreement (the "2005 Shareholders' Agreement"), and (2) a 2009 Amendment to Amended and Restated Shareholders' Agreement (the "2009 Amendment to Shareholders' Agreement").[2] (*Id.* ¶ 6; 2005 Shareholders' Agreement, annexed

---

[1] (Def.'s Mot. to Dismiss ("Def.'s Mot."), Docket Entry No. 29; Def.'s Mem. in Supp. of Def.'s Mot. ("Def.'s Mem."), Docket Entry No. 29-1; Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), Docket Entry No. 30; Def.'s Reply in Supp. of Def.'s Mot. ("Def.'s Reply"), Docket Entry No. 31.)

[2] Prior to Plaintiff and Defendant owning RPI, the Estate of Jeffrey Hyman previously known as Joey Ramone ("the Estate of Hyman") and John Cummings owned RPI pursuant to a 2002 Shareholders' Agreement. (Am. Compl. ¶ 19.) The Estate of Hyman and Cummings each owned one hundred shares of RPI's common stock issued and outstanding. (*Id.*) In 2005, after John Cummings died, the 2005 Shareholders' Agreement was executed, which updated RPI ownership: the Estate of Hyman owned one hundred shares of RPI's common stock issued and

to Am. Compl. as Ex. B, Docket Entry No. 25-2; 2009 Amendment to Shareholders' Agreement, annexed to Am. Compl. as Ex. C, Docket Entry No. 25-3.)

### i. RPI's trademarks

The Ramones were "an iconic punk rock band that formed in Forest Hills, Queens in 1974" comprised of Jeffrey Hyman also known as Joey Ramone; John Cummings also known as Johnny Ramone; Thomas Erdelyi also known as Tommy Ramone; and Douglas Colvin also known as Dee Dee Ramone. (Am. Compl. ¶¶ 15, 17.) Plaintiff is the brother of the late Jeffrey Hyman and Defendant is the wife of the late John Cummings. (*Id.* ¶¶ 38, 59, 60.)

RPI owns trademarks related to the Ramones. (*Id.* ¶ 35.) The trademarks are comprised of the following: (1) the trademark RAMONES (RAMONES, Registration Nos. 3,056,896 and 4,905,059) (the "RAMONES Mark"); (2) the trademark GABBA GABBA HEY (GABBA GABBA HEY, Registration No. 5,740,022) (the "GABBA GABBA HEY Mark"); (3) the trademark HEY HO! LET'S GO (HEY HO LET'S GO, Registration No. 5,715,769) (the "HEY HO! LET'S GO Mark"); (4) the trademark BLITZKRIEG BOP (BLITZKRIEG BOP, Registration No. 5,740,021) (the "BLITZKRIEG BOP Mark"); (5) the trademark ROCK 'N' ROLL HIGH SCHOOL (ROCK 'N' ROLL HIGH SCHOOL, Registration No. 5,740,023) (the "ROCK 'N' ROLL HIGH SCHOOL Mark"); and (6) the Ramones logo (collectively, the "RPI Trademarks"). (*Id.*) In addition, Hyman exclusively licensed the JOEY RAMONE trademark (the "JOEY RAMONE Mark") from RPI. (*Id.* ¶ 37.)

---

outstanding, and the John Family Trust of 1997, u/d/t 2/12/97 (the "Estate of Cummings") owned the remaining one hundred shares of RPI's common stock. (*Id.* ¶ 21.) In 2009, pursuant to the 2009 Amendment to Shareholders Agreement, the Estate of Hyman's ownership was transferred to Plaintiff, and in 2016, Defendant purportedly transferred the Estate of Cummings' ownership to the LCR Trusts. (*Id.* ¶¶ 25, 31.)

### ii. The 2005 Shareholders' Agreement

The 2005 Shareholders' Agreement "provide[s] . . . clarity on the appropriate use of the RPI Trademarks, as well as [Plaintiff's] rights in the JOEY RAMONE Mark." (*Id.* ¶ 46.)

Section 9(b) of the 2005 Shareholders' Agreement states:

> (b) <u>Merchandising.</u> The Company, through its directors and officers, shall control the exploitation, merchandising and licensing of memorabilia, products, apparel and intellectual property . . . related to the Ramones. Subject to the unanimous consent of the Board of Directors and Section 12(b)(iv), no Shareholder shall individually exploit, merchandise or license the Ramones' memorabilia, products, apparel or intellectual property for product endorsements and merchandising rights of any nature whatsoever. Each Shareholder agrees to execute, or cause the Company to execute, such additional agreements, instruments or documents necessary to assign, reflect or perfect ownership of the Intellectual Property to, by or for the Company.

(*Id.* ¶ 47 (emphasis omitted); 2005 Shareholders' Agreement Section 9(b).) According to the agreement, "RPI owns the intellectual property of the Ramones band" and "unanimous consent of the RPI Board of Directors is required prior to individual shareholder's exploitation of RPI Trademarks for commercial purposes." (Am. Compl. ¶ 47.) Pursuant to Section 12(b)(iv) of the 2005 Shareholders' Agreement, Plaintiff "is an exclusive licensee of the JOEY RAMONE Mark." (*Id.* ¶ 48.) The provision states:

> (iv) Permitted Competition. Each Shareholder is granted an exclusive license to its respective professional name ("Joey Ramone" or "Johnny Ramone," as the case may be) to use and exploit it in all industries, including, but not limited to, motion pictures, television, radio, music publishing and songwriting, literary writing and publishing, theatrical engagements, personal appearances, public appearances, recordings reproduced by any method now known or hereafter known, publications, likeness, biographical material, voice and talents for purposes of advertising and trade and for product endorsements and merchandising rights of any nature whatsoever.

(*Id.* (emphasis omitted); 2005 Shareholders' Agreement Section 12(b)(iv).)  The 2005 Shareholders' Agreement further contains an arbitration provision, which states:

> Any dispute, controversy or claim arising under, out of or in connection with or relating to this Agreement, and any amendment, breach or alleged breach hereof, shall be determined and settled by arbitration pursuant to the rules then in effect of the American Arbitration Association . . . . The proceedings shall be administered by the AAA and shall take place in New York City.  Any such award shall be final and binding on the parties thereto and a judgment thereon may be entered in any court having jurisdiction thereof.

(2005 Shareholders' Agreement Section 10(a).)  Rule 7(a) of the American Arbitration Association Commercial Arbitration Rules (the "AAA Rules") states:

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court.

American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures R-7 (2023).

### iii. Prior state litigation

Defendant previously commenced a lawsuit on January 19, 2024, against Plaintiff and his personal manager in the Supreme Court of New York, New York County (the "State Action"). (*See* Compl. (the "State Action Compl."), *Ramone v. Frey*, No. 650309/2024 (N.Y. Sup. Ct. Jan. 19, 2024), Docket Entry No. 2; Am. Compl. (the "State Action FAC"), *Ramone v. Frey*, No. 650309/2024 (N.Y. Sup. Ct. July 15, 2024), Docket Entry No. 248.)  Defendant alleged breach of fiduciary duty and unjust enrichment against Plaintiff and his personal manager, requested removal for cause of Plaintiff's personal manager as a director of RPI, and sought an appointment of temporary receiver of RPI.  (State Action FAC.)  Defendant, *inter alia*, alleged that Plaintiff and his personal manager "seiz[ed] valuable corporate assets belonging to RPI for

[Plaintiff's] own renumeration" including misappropriating the RPI Trademarks by using the RPI Trademarks to sell merchandise outside of RPI. (*Id.* ¶¶ 71–73, 105.) In Plaintiff's answer to the State Action FAC, Plaintiff asserted counterclaims against Defendant alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty. (Answer ("State Action Answer"), *Ramone v. Frey*, No. 650309/2024 (N.Y. Sup. Ct. Aug. 5, 2024), Docket Entry No. 249.) Plaintiff alleged that Defendant had misappropriated the RPI Trademarks and seized corporate opportunities for herself. (*Id.* ¶¶ 111–27.) The State Action is currently ongoing.

## II. Discussion

### a. Standard of review

A district court may dismiss an action for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court "lacks the statutory or constitutional power to adjudicate it." *AMTAX Holdings 227, LLC v. CohnReznick LLP*, 136 F.4th 32, 37 (2d Cir. 2025) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Citizens United to Protect Our Neighborhoods v. Vill. of Chestnut Ridge, N.Y.*, 98 F.4th 386, 391 (2d Cir. 2024) (quoting *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021)); *Brokamp v. James*, 66 F.4th 374, 386 (2d Cir. 2023) (quoting *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015)), *cert. denied*, 144 S. Ct. 1095 (2024); *Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1075 (2d Cir. 2021) (quoting *Makarova*, 201 F.3d at 113). Courts must "accept the complaint's material allegations as true, and . . . draw all reasonable inferences in the plaintiffs' favor," *Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co.*, 116 F.4th 106, 113 (2d Cir. 2024) (quoting *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 725 (2d Cir. 2017)), but "[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to

decide issues of fact by reference to evidence outside the pleadings," *Talarico Bros. Bldg. Corp. v. Union Carbide Corp.*, 73 F.4th 126, 136 (2d Cir. 2023) (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)); *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022) ("It is only where 'jurisdictional facts are placed in dispute' that the court has the 'obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" (first quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014); and then citing *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999))); *see Iacovo v. Magguilli*, No. 24-CV-4372, 2025 WL 1135471, at *3 (E.D.N.Y. Apr. 17, 2025) ("In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." (quoting *Tandon*, 752 F.3d at 243)). Ultimately, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Tandon*, 752 F.3d at 243 (quoting *Makarova*, 201 F.3d at 113); *AMTAX Holdings*, 136 F.4th at 37 ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (quoting *Makarova*, 201 F.3d at 113)).

b. **The Court lacks subject matter jurisdiction over the claims**

Defendant argues that all of Plaintiff's claims relating to the RPI Trademarks and the JOEY RAMONE Mark should be dismissed pursuant to the Federal Arbitration Act (the "FAA") or Rule 12 of the Federal Rules of Civil Procedure.[3] Defendant argues that the claims "are

---

[3] Because the 2005 Shareholders' Agreement states that the agreement "shall be governed and construed in accordance with the laws of the State of New York without giving effect to the choice of law provisions thereof," the FAA provisions govern the agreement. *See Morse v. Levine*, No. 19-CV-6711, 2019 WL 7494619, at *6 (S.D.N.Y. Dec. 19, 2019) ("[T]he New York Court of Appeals has held that the FAA applies unless the choice of law provision states that New York law shall govern both the agreement *and its enforcement*" and "[i]n the absence of more critical language concerning enforcement . . . the parties cannot be said to have

subject to a clearcut, and plainly applicable binding arbitration" provision in the 2005 Shareholders' Agreement and Plaintiff has failed to show that the provision is "invalid or inapplicable to the claims."[4] (Def.'s Mem. 5–6; Def.'s Reply 3–6.) In support, Defendant argues that to "the extent there is any ambiguity . . . to the applicability of the . . . arbitration provision, . . . the 'presumption of arbitrability' requires that 'any doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration'" and Plaintiff cannot avoid arbitration by making tort claims. (Def.'s Mem. 7–8 (citing *McPherson v. Bloomingdale's LLC*, No. 23-CV-1084, 2023 WL 8527462, at *6 n. 8 (E.D.N.Y. Dec. 8, 2023)).) In addition, Defendant argues that "any question of arbitrability must be decided by [a] duly empaneled arbitrator." (*Id.* at 8.) In support, Defendant cites to Section 10(a) of the 2005 Shareholders' Agreement where the parties agreed that arbitrations are governed by the AAA Rules which give the arbitrator the power to rule on the "arbitrability of any claim," without referring the issue to the court. (*Id.* at 9.) Finally, Defendant argues that *Smith v. Spizzirri*, 601 U.S. 472 (2024), is inapplicable because it involved a party that requested a stay of the court proceeding, and therefore the court found that dismissal was an inappropriate mode of relief, but because neither party in the current action seeks a stay, dismissal is appropriate. (Def.'s Reply 4, 6–7.)

Plaintiff argues that the motion should be denied because (1) a motion to dismiss is improper and the Supreme Court in *Smith v. Spizzirri* has clarified that the FAA does not give a

---

intended to modify the default presumption of the FAA's applicability." (emphasis in original) (citations and internal quotation marks omitted)), *report and recommendation adopted*, 2020 WL 85410 (S.D.N.Y. Jan. 3, 2020))

[4] Plaintiff challenges Defendant's motion on the basis that Defendant does not identify the relevant procedural rule for her motion. (Pl.'s Opp'n 7–9.) Defendant argues that Second Circuit caselaw lacks clarity as to what procedural mechanism must be employed in bringing a motion to dismiss based on an arbitration agreement and that dismissal is proper regardless of whether it is under the FAA or Rule 12. (Def.'s Reply 1.)

court discretion to dismiss a case where the parties have agreed to arbitration, (Pl.'s Opp'n 10); (2) the threshold question of arbitrability should be decided by the Court, not an arbitrator, and claims pertaining to the JOEY RAMONE Mark are not covered by the arbitration provision in the 2005 Shareholders' Agreement, (*id.* at 13–14); and (3) Defendant has waived her right to arbitrate the claims relating to the RPI Trademarks, which could fall under the arbitration provision, because she commenced the State Action, which involved litigation about the RPI Trademarks, (*id.* at 3, 14–17).

### i. Motion to dismiss pursuant to 12(b)(1)

There is a "'lack of clarity in the case law of this Circuit as to what procedural mechanism should be employed by courts evaluating the enforceability of an arbitration agreement' as between [Federal Rules of Civil Procedure] 12(b)(1), 12(b)(6), or the FAA." *Barrows v. Brinker Rest. Co.*, 36 F.4th 45, 49 n. 6 (2d Cir. 2022) (quoting *Sinavsky v. NBCUniversal Media, LLC*, No. 20-CV-9175, 2021 WL 4151013, at *2–*3 (S.D.N.Y. Sept. 13, 2021)); *id.* ("[W]e . . . have no cause to take up the (somewhat vexing) question of which of these procedures should be favored when a party moves to dismiss and compel arbitration"); *see also Doheny v. Int'l Bus. Machs., Corp.*, 714 F. Supp. 3d 342, 366 n. 11 (S.D.N.Y. Feb. 1, 2024); *N.Y. Packaging II, LLC v. Intco Med. Indus., Inc.*, No. 21-CV-4388, 2023 WL 2970126, at *2 (E.D.N.Y. Jan. 3, 2023) (similar), *report and recommendation adopted*, Order adopting Report and Recommendation, No. 21-CV-4388 (E.D.N.Y. Jan. 20, 2023); *Harris v. TD Ameritrade Clearing Inc.*, No. 21-CV-8851, 2022 WL 3544171, at *3 (S.D.N.Y. Aug. 18, 2022) ("'[I]t is unsettled' in this Circuit whether 'the correct procedural vehicle' for moving to dismiss a complaint based on the existence of a binding arbitration agreement is governed by Rule 12(b)(1) or Rule 12(b)(6)." (quoting *Fed. Ins. Co. v. Metro Transp. Auth.*, No. 17-CV-3425, 2018 WL 5298387 (S.D.N.Y. Oct. 25, 2018))), *aff'd*, No. 22-1968, 2023 WL 3332560 (2d Cir. May 10,

2023). "Where a party has moved to dismiss pursuant to an arbitration agreement, courts have in certain situations converted a motion to dismiss to one to compel arbitration." *Harris*, 2022 WL 3544171, at *3 (citing *Meridian Autonomous Inc. v. Coast Autonomous LLC*, No. 17-CV-5846, 2018 WL 4759754, at *5 (S.D.N.Y. Sept. 30, 2018)). "[J]udicial conversion of a motion to dismiss to a motion to compel has been limited to situations where the party seeking dismissal has clearly indicated that it intends to compel arbitration." *Harris*, 2022 WL 3544171, at *3 (citing *Meridian Autonomous Inc.*, 2018 WL 4759754, at *3, *5); *see also Singh v. Meetup LLC*, 750 F. Supp. 3d 250, 260 (S.D.N.Y. Aug. 22, 2024) ("This past term, the Supreme Court confirmed the Second Circuit's understanding that a court may not dismiss a case, and instead must issue a stay, 'when the dispute is subject to arbitration and a party *requests a stay pending arbitration*.'" (emphasis added) (citing *Spizziri*, 601 U.S. at 474)); *N.Y. Packaging II, LLC*, 2023 WL 2970126, at *2 (concluding that the court "is not required to construe the motion as a motion to compel arbitration under the FAA where . . . the moving party neither sought an order compelling arbitration nor indicated an intention to seek arbitration" (citing *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016))).

The Court construes the motion as a motion for dismissal under 12(b)(1) and will not construe it as a motion to compel arbitration under the FAA because Defendant neither sought an order compelling arbitration nor indicated an intention to seek arbitration. *Nicosia*, 834 F.3d at 230 ("When the moving party does not manifest an intention to arbitrate the dispute" the district court is not required "to convert the motion to dismiss to one to compel."); *N.Y. Packaging II, LLC*, 2023 WL 2970126, at *2 (citing *Nicosia*, 834 F.3d at 230); *see also Hickey v. Smith*, No. 23-CV-02538, 2025 WL 692052, at *5 (S.D.N.Y. Mar. 3, 2025) ("Under Second Circuit precedent, 'it [is] proper not to construe [a] motion to dismiss as a motion to compel arbitration'

where the motion 'neither [seeks] an order compelling arbitration nor indicate[s] that [the defendant] w[ill] seek to force [the plaintiff] to arbitrate in the future.'" (citation omitted)); *Pennolino v. Cent. Prods. LLC*, No. 22-CV-5051, 2023 WL 3383034, at *9 n. 6 (S.D.N.Y. May 11, 2023) (finding that the defendant was not entitled to an order compelling arbitration because the defendant did not seek such an order in its motion to dismiss or its moving papers).

### ii. The parties delegated questions of arbitrability to the arbitrator

The FAA requires courts to compel arbitration of claims that the parties have agreed to arbitrate. *See AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Courts consider two factors when deciding if a dispute is arbitrable: '(1) whether the parties agreed to arbitrate, and, if so, (2) whether the score of that agreement encompasses the claims at issue.'" *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 179 (2d Cir. 2021) (quoting *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015)). As Justice Ketanji Brown Jackson recently explained in *Coinbase Inc. v. Suski*, the parties may agree to "send the merits of a dispute to an arbitrator," and "[a] contest over 'the merits of the dispute' is a first-order disagreement." 602 U.S. 143, 148 (2024) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). In addition, "[t]he parties may also have a second-order dispute — 'whether they agreed to arbitrate the merits' — as well as a third-order dispute — 'who should have the primary power to decide the second matter.'" *Id.* (quoting *First Options*, 514 U.S. at 942). Regarding a third-order dispute, "[t]he question [of] whether the parties have submitted a particular dispute to arbitration, *i.e.*, the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 153 (2d Cir. 2021) (second alteration in original) (quoting *Howsam v.*

*Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)); *see also Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 393 (2d Cir. 2011) ("'Questions of arbitrability' is a term of art covering 'dispute[s] about whether the parties are bound by a given arbitration clause' as well as 'disagreement[s] about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.' Those issues should be decided by the courts unless 'there is *clear and unmistakable evidence* from the arbitration agreement . . . that the parties intended that [they] be decided by the arbitrator.'" (first quoting *Howsam*, 537 U.S. at 83–85; and then quoting *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002))); *N.Y. Packaging II, LLC*, 2023 WL 2970126, at *4 ("While there is a general presumption that the issue of arbitrability is to be resolved by the courts, the parties may refer the issue to the arbitrator if there is 'clear and unmistakable evidence' of the parties' intention to do so." (citing *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005))); *Lakah v. UBS AG*, No. 07-CV-2799, 2016 WL 4257527, *4 (S.D.N.Y. July 29, 2016) ("Although there is a general presumption that this issue of arbitrability should be resolved by the court, the parties may refer this question to an arbitrator 'if there is clear and unmistakable evidence from the arbitration agreement' that the parties intended to do so." (first citing *First Options*, 514 U.S. at 944–45; and then citing *Contec Corp.*, 398 F.3d at 208)). Thus, "courts 'should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'" *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 72 (2019) (quoting *First Options*, 514 U.S. at 944). "When parties 'explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.'" *Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 117 (2d Cir. 2025) (citing *Contec Corp.*, 398 F.3d at 208); *Olin Holdings Ltd. v. State*, 73 F.4th 92, 105 (2d

Cir. 2023) (finding that the parties incorporated the International Chambers of Commerce (ICC) rules by authorizing investors to submit disputes to the ICC which presumptively applies the ICC rules); *N.Y. Packaging II, LLC*, 2023 WL 2970126, at *4 (citing *Contec Corp.*, 398 F.3d at 208) (same).

The Court lacks subject matter jurisdiction over Plaintiff's claims because the parties have incorporated the AAA Rules into section 10(a) of the 2005 Shareholders' Agreement and the AAA Rules empower the arbitrator to decide issues of validity of arbitration agreements and arbitrability of claims. Section 10(a) of the 2005 Shareholders' Agreement provides that "[a]ny dispute, controversy or claim arising under, out of or in connection with or relating to this Agreement, and any amendment, breach or alleged breach hereof, shall be determined and settled by arbitration pursuant to the rules then in effect of the American Arbitration Association." (2005 Shareholders' Agreement Section 10(a).) Rule 7(a) of the AAA Rules, which governs jurisdiction, states that "[t]he arbitrator shall have the power to rule on . . . any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court."[5] AAA Rules

---

[5] The Court will not opine on whether the claims pertaining to the JOEY RAMONE Mark are not covered by the arbitration provision in the 2005 Shareholders' Agreement as it lacks the power to do so. This is a question for an arbitrator. *See Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 68 (2019) ("When the parties' contract delegates the arbitrability questions to an arbitrator, a court may not override the contract" and a "court possesses no power to decide the arbitrability issue . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless."); *Davitashvili v. Grubhub Inc.*, No. 20-CV-3000, 2023 WL 2537777, at *5 ("If . . . the agreement contains a provision that 'clearly and unmistakably' delegates the threshold issue of arbitrability to the arbitrator, such a delegation must be enforced 'even if the court thinks that the [movant's] arbitrability claim is wholly groundless.'" (alteration in original) (citation omitted)), *aff'd in part, rev'd in part and remanded*, 131 F.4th 109 (2d Cir. 2025); *see also Chung Chang v. Warner Bros. Ent.*, No. 19-CV-2091, 2019 WL 5304144, at *5 (S.D.N.Y. Oct. 21, 2019) (declining to "address whether some of [the plaintiff's] claims are beyond the scope of the [a]greement"

Rule 7(a); *see also N.Y. Packaging II, LLC*, 2023 WL 2970126, at *5 (concluding that the defendant's motion to dismiss can "be granted pursuant to Rule 12(b)(1) without prejudice to any future demand for arbitration" because there was "'clear and unmistakable' evidence of the parties' intention to delegate the issue of arbitrability to [the Chinese International Economic and Trade Arbitration Commission]and whether [p]laintiff's claims fall within the scope of the [a]rbitration [c]lause is properly decided in that forum" (collecting cases)); *Lapina v. Men Women N.Y. Model Mgmt.*, 86 F. Supp 3d 277, 283–84 (S.D.N.Y. 2015) ("[A] party who signs a contract containing an arbitration clause and incorporating by reference the AAA rules . . . cannot [later] disown its agreed-to obligation to arbitrate all disputes, including the question of arbitrability (alterations in original) (internal quotation marks and citations omitted)).[6]

### iii. Waiver of right to arbitrate

Defendant argues that she did not waive her right to arbitrate the claims related to the RPI Trademarks because she "has not engaged in any merits litigation of [Plaintiff's] claims, let alone the sort of 'protracted litigation that results in prejudice to [Plaintiff].'" (Def.'s Reply 8 (citation omitted).)

---

because the agreement specified that "[a]ny question concerning the arbitrability of any claim or issue . . . shall be resolved by the arbitrator" (third alteration in original)).

[6] Because the Court concludes that it lacks jurisdiction pursuant to Rule 12(b)(1), the Court cannot determine whether Plaintiff's allegations sufficiently state any claim pursuant to Rule 12(b)(6). *See One Techs., LLC v. Amazon.com, Inc.*, 860 F. App'x 785, 788 (2d Cir. 2021) (holding that the district court "lack[ed] power to dismiss a complaint for failure to state a claim" because it lacked jurisdiction and a "federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction)" (first quoting *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963) (en banc); and then quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007))); *Hong v. Belleville Dev. Grp., LLC*, No. 15-CV-5890, 2016 WL 4481071, at *2 (S.D.N.Y. Aug. 17, 2016) ("[B]ecause the [c]ourt concludes that there is an enforceable arbitration clause that requires dismissal of this action pursuant to Rule 12(b)(1), the [c]ourt need not reach [the defendant's] 12(b)(6) arguments").

Plaintiff argues that Defendant has waived her right to arbitrate the claims relating to the RPI Trademarks, which could fall under the arbitration provision, because she commenced the State Action litigating the RPI Trademarks. (Pl.'s Opp'n 3, 14–17.)

Federal policy strongly favors arbitration, and waiver of the right to arbitrate "is not to be lightly inferred." *Nicosia v. Amazon.com, Inc.*, 815 F. App'x. 612, 614 (2d Cir. 2020) (quoting *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 104–05 (2d Cir. 2002) (per curiam)). Indeed, "[t]he rule preferring arbitration, when agreed upon, ha[s] led to its corollary that any doubts concerning whether there has been a waiver are resolved in favor of arbitration." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 228 (2d Cir. 2001) (alterations in original) (quoting *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995)). Nevertheless, a party waives its right to arbitration "when it engages in protracted litigation." *Tech. in P'ship, Inc. v. Rudin*, 538 F. App'x 38, 39 (2d Cir. 2013) (quoting *Crysen/Montenay Energy Co. v. Shell Oil Co.* (*In re Crysen/Montenay Energy Co.*), 226 F.3d 160, 162 (2d Cir. 2000)). "[P]rior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate" and "[i]t is irrelevant that the prior litigation occurred as part of a separate action or in a different court." *CollegeStreet Imp. & Exp. (Tianjin) Co. v. TL x HF, LLC*, 777 F. Supp. 3d 238, 248 n. 7 (S.D.N.Y. 2025) (citing *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 108 n.2 (2d Cir. 1997)); *see Johnson v. Ensite USA, Inc.*, No. 21-CV-4437, 2022 WL 463381, at *4 (S.D.N.Y. Feb. 15, 2022) ("[P]rior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate." (citation omitted)); *see also FPE Found. v. Cohen*, 801 F.3d 25, 30 (1st Cir. 2015) ("[O]nly prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to

arbitrate" (quoting 1 Domke on Commercial Arbitration § 23:6 (2014))). "[F]inding waiver where a party has previously litigated an unrelated yet arbitrable dispute would effectively abrogate an arbitration clause once a party had litigated any issue related to the underlying contract containing the arbitration clause." *Reliability Inc. v. Doki*, No. 20-CV-7109, 2021 WL 3408589, at *13 (S.D.N.Y. Aug. 4, 2021) (citing *Drs. Assocs., Inc. v. Distajo*, 107 F.3d 126, 133 (2d Cir. 1997)); *see also Murray v. DCH Toyota City*, No. 20-CV-7383, 2021 WL 1550074, at *4 (S.D.N.Y. Apr. 20, 2021) (same).

In determining whether a defendant has waived the right to arbitrate, courts consider whether the defendant "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 412 (2022). To determine whether a party has acted inconsistently with that right to arbitrate, a court "may consider all aspects of the moving party's conduct," including "(1) the time elapsed from when litigation was commenced until the request for arbitration" and "(2) the amount of litigation to date, including motion practice and discovery" "as long as it is done without the lens of prejudice."[7] *Doyle v. UBS Fin. Servs., Inc.*, 144 F.4th 122, 126, 130 (2d Cir. 2025); *LifeTree Trading Pte. Ltd. v. Washakie Renewable Energy, LLC*, 764 F. App'x 105, 107 (2d Cir. 2019) (quoting *La. Stadium & Expo.*

---

[7] Prior to the Supreme Court's decision in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), the Second Circuit also considered a third factor — whether there was prejudice to the party that did not move to compel arbitration. *See LifeTree Trading Pte. Ltd. v. Washakie Renewable Energy, LLC*, 764 F. App'x 105, 107 (2d Cir. 2019). *Morgan* discussed the Eighth Circuit's two-pronged test for waiver, which considered whether (1) a party acted inconsistently with its right to arbitration and (2) whether it prejudiced the other party by its inconsistent actions. 596 U.S. at 415. The Supreme Court determined that a waiver analysis in the arbitration context cannot consider prejudice and remanded to the Eighth Circuit to determine whether the defendant had "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right," focusing on the other prong of the Eighth Circuit's traditional waiver test. *Id.* at 417–19. Since *Morgan*, the Second Circuit has not ruled on whether a new standard applies to motions to compel arbitration. Accordingly, the Court considers the other two elements traditionally considered by the Second Circuit. *See LifeTree*, 764 F. App'x at 107.

*Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010)); *Johnson*, 2022 WL 463381, at *4 ("In determining whether [the] [d]efendant has waived its right to arbitration, the [c]ourt considers such factors as '(1) the time elapsed from the commencement of litigation to the request for arbitration [and] (2) the amount of litigation (including any substantive motions and discovery) . . . .'"). "There is no rigid formula or bright-line rule for identifying when a party has waived its right to arbitration; rather, the above factors must be applied to the specific context of each particular case." *La. Stadium & Expo. Dist.*, 626 F.3d at 159.

The Court is not persuaded by Plaintiff's argument that Defendant waived her right to arbitrate the infringement, unfair competition, and dilution claims relating to the RPI Trademarks because of the State Action. While there is some factual overlap between the two actions because they both involve the 2005 Shareholders' Agreement and touched upon the RPI Trademarks, the factual and legal issues are distinct. (*See generally* State Action FAC; Am. Compl.; State Action Answer). The current action contains allegations about Defendant's use of RPI Trademarks for a Johnny Ramone tribute event that would generate income for her personal gain and is not a part of the State Action. (Am. Compl. ¶¶ 79–80; *see generally* State Action Answer.) Conversely, the State Action contains allegations that Defendant usurped corporate opportunities by publishing a book called "Learn to Count 1-2-3-4 with Johnny Ramone," which is not being litigated in the current action. (State Action Answer ¶ 125.) *Desarrolladora La Ribera v. Anderson*, No. 24-CV-67, 2024 WL 5186600, at *17 (S.D.N.Y Dec. 20, 2024) (concluding that "[w]hile there is considerable factual overlap between [the plaintiff]'s defamation claims and [the defendant]'s fraud counterclaims, they are not identical either legally or factually, and thus the fact that [the plaintiff] seeks to litigate its own claims does not

constitute a waiver of its right to arbitrate the counterclaims"); *LifeVoxel.AI. Inc. v. Mamillapalli*, No. 23-CV-534, 2024 WL 1343590, at *9 (D. Conn. Mar. 29, 2024) ("Despite overlap in the parties and some of the allegations, as the two actions are distinct, the [c]ourt finds the question of whether the filing of the . . . action[s] waived [the p]laintiff's opportunity to arbitrate is also one that should be left to the arbitrator.").

      Moreover, the State Action involved claims for unjust enrichment and breach of fiduciary duty — claims grounded in fiduciary and equitable principles — regarding the alleged usurpation of corporate opportunities and internal misappropriation of the RPI Trademarks, (State Action Am. Compl. ¶¶ 65–73), and counterclaims concerning the parties' contractual and corporate governance relationship also relating to the RPI Trademarks, (*see generally* State Action Answer). In contrast, the current action involves Lanham Act violations and common law trademark infringement and unfair competition which focus on consumer-facing conduct and implicate different legal frameworks and policy concerns. *Weiss v. Am. Express Nat'l Bank*, No. 19-CV-4720, 2020 WL 6807628, at *2 (S.D.N.Y. Nov. 18, 2020) (finding no waiver because the collection claims in the prior litigation were "unlike the Fair Credit Billing Act, Truth in Lending Act, and New York General Business Law claims at issue" in the later litigation); *cf. PPG Indus., Inc.*, 128 F.3d at 108 n.2 (finding the same legal and factual issues in separate actions because the four counterclaims raised were *duplicative* across both actions and "both actions arose out of the same core facts" (emphasis added)); *AXA Versicherung AG v. N.H. Ins. Co.*, 708 F. Supp. 2d 423, 432 (S.D.N.Y. Apr. 29, 2010) (noting that "the [c]ourt f[ound] it highly probative, if not dispositive, that prior to th[e] litigation, [the defendant] decided in [a] parallel . . . case not to seek arbitration of a *nearly identical fraudulent inducement claim*" with factual overlap" (emphasis added)). Defendant has not previously invoked the judicial process for the current

claims.

In addition, the current action does not warrant a finding of waiver based on the length of time prior to Defendant's motion to dismiss because there was no meaningful delay by Defendant. Defendant sought leave to move to dismiss the action within four months of Plaintiff filing the action. (Def.'s Pre-Motion Conf. Ltr., Docket Entry No. 16.) Plaintiff filed his Complaint on August 23, 2024, (*see* Compl.), Defendant waived service of the Complaint on October 8, 2024, (Waiver of Service, Docket Entry No. 9), and requested a pre-motion conference for her motion to dismiss on November 25, 2024, including on the ground that Plaintiff's claims must be arbitrated, (Def.'s Pre-Motion Conf. Ltr). Thus, Defendant notified Plaintiff of her intent to move to dismiss based on the arbitration provision, among other reasons, within a few weeks of accepting service of the Complaint. Plaintiff subsequently filed the Amended Complaint on January 24, 2025, (*see* Am. Compl.), and Defendant filed this motion within two months of the Amended Complaint on March 21, 2025, (Def.'s Mot.). Thus, Plaintiff fails to show that there was any meaningful delay by Defendant. *See Besara v. Hom*, No. 20-CV-3862, 2021 WL 2703351, at *4 (E.D.N.Y. July 1, 2021) ("Here, [the defendants] waited more than seven months to file a motion to compel arbitration, but '[i]t is beyond question that defendants' delay in seeking arbitration during approximately eight months of pretrial proceedings is insufficient by itself to constitute a waiver of the right to arbitrate.'" (second alteration in original) (citation omitted)); *see also In re Generali COVID-19 Travel Ins. Litig.*, 577 F. Supp. 3d 284, 294 (S.D.N.Y. 2021) (refusing to find waiver after approximately one year delay in seeking to enforce its right to arbitration). Furthermore, the parties have not engaged in discovery nor any motion practice to resolve the present claims outside of this current motion. *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 236 (S.D.N.Y. 2020) (finding no

waiver where the parties engaged in extensive discovery comprising forty-four briefed motions, more than one hundred letters, and "hundreds of thousands of pages of discovery production"). Viewing the facts in the light most favorable to Plaintiff, and mindful that "[w]aiver is not to be lightly inferred," *Nicosia*, 815 F. App'x at 614, the dissimilarities between the prior and current litigation, the lack of delay by Defendant in making her motion, and the limited litigation to date do not weigh in favor of waiver.

## III. Conclusion

For the foregoing reasons, the Court grants Defendant's motion and dismisses the Amended Complaint without prejudice to any future demand for arbitration.

Dated: September 4, 2025
       Brooklyn, New York

                                        SO ORDERED:

                                             s/ MKB
                                       MARGO K. BRODIE
                                       United States District Judge